UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ASATA DIA LOWE,                )
                               )
        Plaintiff,              )
                               )
v.                             )   No.: 3:15-CV-46-PLR-HBG
                               )
DAVID SEXTON,                  )
                               )
        Defendant.              )
                               )

**MEMORANDUM OPINION**

Before the Court is a timely complaint pursuant to 42 U.S.C. § 1983 filed by Asata Lowe ("Plaintiff") on January 29, 2015 [Doc. 1]. In addition to the complaint, the Court is in possession of numerous non-dispositive motions, including: a motion to proceed in forma pauperis [Doc. 3]; a motion to hold the case in abeyance [Doc. 4]; a motion retracting that request for abeyance and requesting leave to amend the complaint [Doc. 5]; two requests for service of summons [Docs. 7, 8]; a motion to change defendants [Doc. 9]; and three motions to schedule a hearing [Docs. 6, 10, 11].

**I.  ANALYSIS**

  **A.  Motion to Proceed *In Forma Pauperis***

Under the Prison Litigation Reform Act ("PLRA"), any prisoner who files a complaint in a district court must tender the full filing fee or file (1) an application to proceed i*n forma pauperis* without prepayment of fees and (2) a certified copy of his inmate trust account for the previous six-month period. 28 U.S.C. § 1915(a)(2). Plaintiff submitted a fully compliant

application to proceed *in forma pauperis* on March 9, 2015 [Doc. 3], and it appears from that application that he lacks sufficient financial resources to pay the $350.00 filing fee. Accordingly, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 3] is **GRANTED** and, pursuant to 28 U.S.C. § 1915, the Clerk is **DIRECTED** to file this action without the prepayment of costs or fees or security therefor as of the date the complaint was received. For the reasons stated below, however, process shall not issue; this action will be **DISMISSED**.

### B. Non-Dispositive Motions Requiring Resolution Prior to Screening

On April 1, 2015, Plaintiff filed a motion to hold the case in abeyance pending exhaustion of state remedies [Doc. 4] only to withdraw that motion less than two months later on May 29, 2015 [Doc. 5]. The request for abeyance [Doc. 4] will be **DENIED as moot** accordingly. Plaintiff's request for leave to amend his complaint by adding Derrick Schofield, the commissioner of the Tennessee Department of Corrections, as a defendant [Doc. 5] will be **GRANTED**; the amended complaint [Doc. 1, 5], however, will be **DISMISSED** *sua sponte*.

On July 6, 2015, Plaintiff filed a motion to "change defendants" in which he explains that David Sexton is no longer the warden of the Morgan County Correctional Complex and asks that the Court substitute the new warden, Shawn Phillips, as named defendant [Doc. 9]. The motion [Doc. 9] is **GRANTED** and the Clerk is **DIRECTED** to make the requested substitution.

### C. *Sua Sponte* Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999) ("Congress directed the federal courts to review or 'screen' certain complaints *sua sponte* and to dismiss

2

those that failed to state a claim upon which relief could be granted [or] . . . sought monetary relief from a defendant immune from such relief.").

To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, the plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).

Plaintiff's complaint challenges the validity of Tenn. Code Ann. § 39-13-202 and Tenn. Code Ann. § 39-13-403—the Tennessee criminal statutes under which he was convicted—as well as Tenn. Code Ann. § 40-35-101—the Tennessee penal statute under which he was sentenced—based on the fact that his continued incarceration thereunder would deprive him of numerous constitutional entitlements [Doc. 1 pp. 1–5]. Specifically, he complains that continued enforcement of these "unconstitutional" statutes would unlawfully prevent him from exercising the following constitutional privileges: (1) asserting claims, transacting business, seeking office with the United States Government ("Claim One") [Doc. 1 pp. 2, 3 (citing his inability to volunteer or be employed by the federal government as one right that would be deprived by his continued incarceration)]; (2) "demand[ing] the care and protection of the Federal Government over his life, liberty, and property when on the high seas or within the jurisdiction of a foreign

3

government" ("Claim Two") [Doc. 1 pp. 2, 3–4 (listing lack of "access to seaports" as restrictive to his participation in "foreign commerce"]; participating in interstate travel, the acquisition of private property or real estate, and lawful commerce ("Claim Three") [Doc. 1 pp. 2, 4 (listing raising of animals and farming of produce for profit, creating and manufacturing goods to sell to customers from other states, and general participation in commerce as examples)]; equal access to property of "every kind" in the pursuit of happiness and safety ("Claim Four") [Doc. 1 pp. 2, 4–5 (listing the use of telephones, internet, federal research institutions, the Federal Trade Commission ("FTC"), and Securities and Exchange Commission ("SEC") as specific examples)]. Plaintiff goes on to request that the Court declare that all three of the Tennessee statutes "deprive[] [him] of rights guaranteed by the U.S. Constitution," enjoin the warden of the Morgan County Correctional Complex from "further depriving [him] of [those] rights, privileges, and immunities," and provide "any other relief [to which he] may be entitled" [Doc. 1 pp. 3–5 (requesting identical relief under each "claim")]. The fact that Plaintiff's complaint relies on deprivations inherent in the very concept of lawful confinement leads the Court to conclude that the substance of his request hopes to challenge the validity of incarceration itself, not atypical conditions that would give rise to a cognizable § 1983 claim.

It is well established that prisoners "in state custody cannot use . . . § 1983 action[s] to challenge 'the fact or duration of [their] confinement,'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)), because "[c]hallenges to the validity of [one's] confinement or to particulars affecting its duration are the province of habeas corpus," *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam)). The foregoing rule is not limited to circumstances in which a prisoner expressly demands that he or she be released from confinement, but instead extends to

4

all requests for damages or injunctive relief where a favorable ruling would "necessarily imply the invalidity of [the prisoner's] conviction or sentence." *LaFountain v. Coleman*, No. 10-1207, 2010 U.S. App. LEXIS 27709, at *2–3 (6th Cir. Dec. 30, 2010) (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). To state a claim under the latter scenario—based on "harm caused by actions whose unlawfulness would render a conviction or sentence invalid"—the plaintiff "must prove that the [relevant] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. Requested relief "bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487.

In the current case, Plaintiff argues that the warden's continued enforcement of Tenn. Code Ann. §§ 39-13-202, 39-13-403, and 40-35-101 would deprive him of numerous rights, privileges, immunities, and other guarantees under the United States Constitution. The rights identified, however—restrictions to interstate travel, limitations on his ability to vote, hold public office, or travel to the seat of government, or freely engage in commercial activity—are encumbrances innate to the concept of lawful detention. *See e.g.*, *Gatson v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (explaining that inmates only possess a claim of entitlement to, and thus can only predicate a § 1983 action upon the deprivation of, those interests "which were not taken way, expressly or by implication, in the original sentence of confinement"); *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (explaining infringements on freedom from restraint only give rise to a cognizable § 1983 claim where they impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life). When these complaints are viewed in conjunction with the relief requested—a declaration that the Tennessee laws are unconstitutional

5

and injunction prohibiting Plaintiff's continued imprisonment thereunder—it becomes obvious that the essence of the action seeks to challenge, and a favorable verdict would thus undermine, the validity of Plaintiff's conviction and sentence. The fact that the underlying conviction has not yet been reversed on direct appeal, expunged by executive order, or declared invalid by a state tribunal requires *sua sponte* dismissal of the action for failure to state a cognizable § 1983 claim. *See Heck*, 512 U.S. at 487 ("When a state prisoner seeks damages in a § 1083 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless . . . the conviction or sentence has already been invalidated."); *see also Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (extending *Heck* rule to claims for declaratory and injunctive relief where a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction").

Even if the claims raised were sufficient to state a cognizable claim for relief under § 1983—which they are not—Plaintiff has failed to set forth facts necessary to establish the first element of a meritorious action—unlawful deprivation of a right, privilege, or immunity secured by the United States Constitution. While the Fourteenth Amendment prohibits a state from depriving citizens of liberty without due process of law, individuals lawfully convicted and confined to prison lose a significant interest in their liberty for the period of that sentence. *Gaston*, 946 F.2d at 343. Embraced in this loss is their consignment to a prison regimen. *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). "As long as the conditions or degree of confinement to which the [the prisoners are] subjected is within the sentence imposed . . . and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject [the] inmates' treatment . . . to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Restrictions in Plaintiff's ability to travel between states, access international ports, visit the seat of national government, and participate in commerce fail to rise to the level of a denial of due process because they are "matters which every prisoner can anticipate are contemplated by his original sentence to prison." *Gatson*, 946 F.2d at 343; *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 99 S. Ct. 2100, 2104 (1979) (holding that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); J*ones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (holding that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948))); *Gatson*, 946 F.2d at 343 (finding changes in a prisoner's "location, variations [in his] daily routine, changes to the conditions of his confinement, and denial of privileges" did not give rise to a constitutional injury). Citation to his loss of the right to vote, hold public office, or participate in commercial enterprise for profit during the term of incarceration similarly fail to identify an actionable constitutional violation. *See, e.g., Padilla v. Kentucky*, 130 S. Ct. 1473, 1488 (2010) (explaining lawful consequences of a criminal conviction include civil commitment, civil forfeiture, loss of right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge, and loss of business license); *Robinson v. N.H. Adult Parole Bd.*, No. 09-cv-374, 2010 U.S. Dist. LEXIS 72047, at *8–9 (D.N.H. June 28, 2010) (same).

### D. Remaining Non-Dispositive Motions

In addition to the numerous non-dispositive motions discussed above, Plaintiff has filed two requests for service of summons [Docs. 7, 8] and three requests to schedule a hearing [Docs. 6, 10, 11]. All five motions [Docs. 6, 7, 8, 10, 11] will be **DENIED as moot**.

## II. CONCLUSION

Because Plaintiff is an inmate in the Morgan County Correctional Complex, he is herewith **ASSESSED** the civil filing fee of $350.00. Pursuant to 28 U.S.C. § 1915(b)(2), the custodian of Plaintiff's inmate trust account at the institution where he now resides is directed to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, twenty percent (20%) of the Plaintiff's preceding monthly income (or income credited to the Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Memorandum and Order to the Warden of the Morgan County Correctional Complex, the Commissioner of the Tennessee Department of Correction, and the Attorney General for the State of Tennessee to ensure that the custodian of the Plaintiff's inmate trust account complies with that portion of the Prison Litigation Reform Act relating to payment of the filing fee. The Clerk is further **DIRECTED** to forward a copy of this Memorandum and Order to the Court's financial deputy.

For the reasons discussed in proceeding sections, Plaintiff's requests to substitute defendants, amend the complaint, and proceed *in forma pauperis* [Docs. 3, 5, 9] will be **GRANTED**. The amended complaint [Docs. 1, 5], however, will be **DISMISSED** *sua sponte* pursuant to the Court's screening authority under the PLRA and remainder of Plaintiff's motions [Docs. 4, 6, 7, 8, 10, 11] will be **DENIED as moot**. The Court has reviewed this case pursuant to 28 U.S.C. § 1915(a) and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Thus, this Court will **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure.

8

**AN APPROPRIATE ORDER WILL ENTER.**

_____
**UNITED STATES DISTRICT JUDGE**